## THE PEOPLE *v.* SANTIAGO.

## APPEAL from the District Court of Humacao.

No. 240.—Decided June 7, 1910.

CRIMINAL LAW—BILL OF EXCEPTIONS—STENOGRAPHER'S NOTES—THEIR LEGAL SCOPE.—The transcript of the testimony of witnesses and of everything occurring at the trial, made by the stenographer of a court, does not possess the scope or the value of a bill of exceptions or a statement of facts, and therefore, it cannot serve as a substitute for those documents.

ID.—STENOGRAPHIC NOTES OF THE INSTRUCTIONS OF THE JUDGE TO THE JURY.— The provisions of section 300 of the Code of Criminal Procedure do not refer in any way to the stenographic notes of the facts proven at the trial, but only to the charges or instructions given by the court to the jury either of its own motion or at the request of counsel.

INSTRUCTIONS BY THE COURT TO THE JURY, OF ITS OWN MOTION, OR AT THE RE-QUEST OF COUNSEL.—Our Code of Criminal Procedure makes use of the word "charges" in the generic sense, including instructions properly so-called, whether given by the court of its own motion or at the request of counsel. It does not recognize the distinction drawn in the statutes of Texas and some other States, between "charges," which are given by the court of its own motion to the jury, and "instructions" which are given at the request of counsel.

ID.—DUTIES OF THE STENOGRAPHER—MINUTES OF THE COURT—LEGAL SCOPE OF THE STENOGRAPHIC NOTES.—The court stenographer is required to take down the testimony of the witnesses, and to file the stenographic records made by him with the secretary of the court, which copy constitutes *prima facie* the "minutes" of the court and may be used on all motions for new trials, review or appeal, when "minutes" of the court may be used as such.

ID.—LEGAL SCOPE OF MINUTES OF THE COURT.—The minutes of the court never include the testimony of witnesses, nor can they serve the purposes of a statement of facts or of a bill of exceptions.

ID.—PROBATORY EXTENT OF STENOGRAPHIC NOTES.—Where there is any doubt as to the exact testimony of a witness, the stenographic notes furnish the best proof of what the witness did really testify.

ID.—STATEMENT OF FACTS.—The statement of facts should be a brief and concise statement of all the facts proven on the trial, either by witnesses testifying orally or by documentary evidence, and in the preparation and approval of said document, the method prescribed in rule No. 17 of the Rules of the District Court, for criminal cases, should be followed.

ID.—MODE OF PREPARING A BILL OF EXCEPTIONS.—The bill of exceptions should be made a distinct document, and as such appear in the transcript, properly headed, with the style and number of the action. It should begin something like this: "Be it remembered that on such and such a date, in the above-styled case, the following proceedings took place and the following evidence was introduced on the trial." In this document shall be set out in narrative form the proceedings had and facts proven at the trial.

ID.—DOCUMENTS FORMING PART OF THE JUDGMENT ROLL.—It is not necessary to include in the bill of exceptions the accusation, the verdict of the jury, the judgment of the court, or other documents which form part of the judgment roll, or are otherwise necessarily contained in the transcript.

ID.—QUESTIONS RAISED AND OBJECTIONS MADE UPON THE TRIAL.—Questions of law raised upon the trial should be set out in the bill of exceptions, together with the ruling of the court thereon, and it should also be stated what objections were made by the party preparing the bill of exceptions, and what were the rulings of the court made thereon.

ID.—AMENDMENTS TO THE BILL OF EXCEPTIONS—REDRAWING OF SAME—CERTIFICATION AND APPROVAL THEREOF.—If counsel for the parties cannot agree upon the bill of exceptions, the original bill, with the amendments proposed thereto, should be presented to the judge for his decision as to what amendments should be allowed; and, finally, when the amendments are settled, the bill should be redrawn with the amendments incorporated into it, so as to make a perfect bill which can be approved by the court. When thus amended and engrossed the bill of exceptions should be approved by the judge and filed by the secretary and made a part of the record.

ID.—TRANSCRIPT OF RECORD—DOCUMENTS IT SHOULD CONTAIN.—The transcript presented in this court, for the purposes of an appeal, should be a complete document with a distinct beginning and ending and giving a clear account of the proceedings taken in the trial court. It should contain the notice of appeal, the judgment roll, and include a statement of the case, a bill of exceptions or a statement of facts, if any of these are necessary to a decision of the questions involved and to be decided by the court on appeal.

ID.—ADMISSION AND EXCLUSION OF EVIDENCE—IMPEACHING THE VERACITY OF A WITNESS.—In impeaching the veracity of a witness, it is necessary to follow the method prescribed by sections 245 and 246 of the Code of Criminal Procedure, calling the attention of the witness to the time, place, persons present, and circumstances under which he made the statement which is contradicted.

ID.—VERACITY OF WITNESS FOR THE PROSECUTION IMPEACHED BY THE DEFENDANT.—To impeach the veracity of a witness for the prosecution, by asking him if he had been informed against several times by the defendant for theft, it is necessary to state definitely the purpose counsel has in view, in asking questions of this nature.

ID.—LATITUDE ALLOWED ON CROSS-EXAMINATION.—Great latitude is allowed to counsel on cross-examination, and district attorneys ought not to object to their questions except for very good reasons. The extent of the examination is confined, in a great measure, to the discretion of the trial court, and unless an abuse of this discretion is shown, its rulings in this matter will not be held to require a reversal of the judgment.

ID.—CONTRADICTORY EVIDENCE AS TO THE AGE OF A CALF.—Any discrepancy between the age of the calf alleged to have been stolen and the one which the witness testified was in the possession of the person who had purchased it from the accused, is a matter for the jury to consider in connection with all the other evidence in the case.

ID.—MOTION TO STRIKE OUT ALL THE EVIDENCE FOR THE PROSECUTION.—Motions to strike out testimony should be sustained only when, through some mistake

or inadvertence, some fact or other is allowed to be proven which does not belong to the case. Motions to strike from the record all the evidence produced by the prosecution should be granted only in the rarest cases, for such a concession would amount to a withdrawal of the case from the jury, or a peremptory instruction for an acquittal.

ID.—PEREMPTORY ACQUITTAL OF THE DEFENDANT.—When the court is asked to acquit the defendant for want of sufficient evidence to warrant conviction and the questions raised are purely matters of fact, the motion should be overruled and the questions left to the jury for their decision under proper instructions from the court.

ID.—ABSENCE OF A COMPLETE STATEMENT OF FACTS.—There being no statement in the transcript which purports to set out all the facts adduced on the trial, this court has no means of knowing whether or not the evidence was sufficient to support the verdict and judgment.

ID.—BILL OF EXCEPTIONS.—The bill of exceptions presents only such portions of the evidence as are necessary to determine whether or not the rulings of the court are correct; and that in the absence of a showing to the contrary, it must be presumed that the judgment is sustained by the evidence.

ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—FACTS IN EXISTENCE AFTER THE VERDICT.—A motion for a new trial on account of newly discovered evidence should be overruled when such evidence is related to facts in existence after the rendition of the verdict.

ID.—SUFFICIENCY OF THE INFORMATION—RULES IN CALIFORNIA AND OTHER STATES.—This court has never held that the same strict rules should be applied to informations presented in our insular courts as are enforced in like cases in California, Texas, Montana, and other States.

ID.—GRAND LARCENY—THEFT OF A LIVE CALF.—The crime of grand larceny is complete if the property stolen is a live calf, regardless of its value; but if the animal was dead at the time of the appropriation or asportation, then it was not a calf, but veal or carrion, and the value would need to be proven and shown to be greater than $50 to constitute the offense of grand larceny.

ID.—PENAL CODE—ENGLISH TEXT THE ORIGINAL.—The English is the original text of the Penal Code in force in this Island, as it was the English copy of the bill which was signed by the Governor and became the law of the land. Therefore in cases of discrepancy between the English and Spanish texts, the former must prevail.

ID.—PENAL CODE—JURISPRUDENCE OF CALIFORNIA.—Section 426 of our Penal Code having been copied literally from section 484 of the Penal Code of California, the construction placed upon that section by the Supreme Court of that State must receive our highest respect.

ID.—LEGAL SIGNIFICATION OF THE ENGLISH WORD ''FELONIOUSLY.''—The English word ''feloniously,'' in a legal sense, means done with the intent to commit a crime of the nature of a felony, or done in a felonious manner, which is the same as saying with deliberate intent to commit a crime.

ID.—TRANSLATION OF THE WORD ''STEAL'' BY ''SUSTRAER.''—The word ''steal'' having been translated in the Spanish text of the Penal Code as *''sustraer,''* and the Spanish copy of said Code having been in use for eight years, an information in which it is stated that the defendant *''sustrajo₂,''* is sufficient to give him notice of the crime wherewith he is charged.

ID.—No OBJECTION TO THE INFORMATION PRESENTED IN THE TRIAL COURT.—The wording of an information cannot be excepted to for the first time on appeal when the defendant presented no objection in the court below to the information as it was written.

ID.—GRAND LARCENY—RENDERING OF THE WORD "FELONIOUSLY" BY THE WORDS "CON INTENCIÓN CRIMINAL."—On information charging a person with the commission of the crime of grand larceny, alleging the asportation of a calf, "con intención criminal," cannot be excepted to as insufficient because not giving the Spanish equivalent of the English word "feloniously," for in the light of the definitions of this word, it is seen that it amounts to the phrase employed in the information, namely, that the act had been committed "with criminal intent."

ID.—POWER OF THE SUPREME COURT TO REDUCE PUNISHMENT.—Under section 364 of the Code of Criminal Procedure, this court has power in its discretion to modify the judgments of the district courts, by reducing the punishment imposed, or otherwise.

The facts are stated in the opinion.

Messrs. *Arturo Aponte, Jr.,* and *Miguel Guerra* for appellant.

Mr. *Jesús M. Rossy, fiscal,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

The appellant in this case, Obdulio Santiago, was accused in the District Court of Humacao, of stealing a calf; and on prosecution and trial therefor, before a jury, was convicted and sentenced to five years' imprisonment in the insular penitentiary at hard labor. The information was presented on November 1 of last year, and charged that the defendant "on a night of May, 1909, within the judicial district of Humacao, P. R., carried away, with criminal intent, from a farm of Telésforo Hernández a white-tailed calf with a star in its forehead, the property of Felipe Hernández, and sold it to Lorenzo Gómez." The defendant was arraigned upon this accusation and pleaded "not guilty" thereto. The jury on the trial, after due deliberation, on November 17 last, found the defendant guilty of grand larceny; and after overruling a motion in arrest of judgment, and one for a new trial, the court passed sentence upon the accused as above set forth on December 11. This appeal was taken from the order overruling the motion for a new trial, from that denying the mo-

tion in arrest of judgment, and from the final judgment of conviction rendered against him herein.

No brief is filed in this court on behalf of the appellant, but counsel appeared for him in oral argument. The *fiscal* of this court appeared against him, both in oral argument and by a written brief, discussing all the important questions presented.

A bill of exceptions was prepared by counsel who represented the accused in the trial court, in the making of which, the rules of the district court and of this court and the numerous opinions of this court, in which an effort has been made to instruct counsel defending persons accused of crime in the proper preparation and presentation of their cases here, have been utterly ignored. We have heretofore made observations in regard to such matters and announced substantially on this subject the following general directions.

The stenographer is an officer of the court, but neither the stenographer's notes nor a transcript of them can be considered as a bill of exceptions nor as a statement of facts, nor a statement of the case, nor can they be used as a substitute for any one of these papers. The Code of Criminal Procedure makes no mention of a stenographer or stenographer's notes, although in section 300 thereof a reference is made to charges or instructions which may have been taken down by a shorthand reporter, and providing that such charges need not be excepted to nor embodied in the bill of exceptions, but with proper indorsements thereon by the court, showing its action in regard thereto, they can form a part of the record, which may be presented to this appellate court for its consideration, in the same manner as if they had been duly embodied in the bill of exceptions. This section of the Code of Criminal Procedure does not refer in any manner to the facts proven on the trial, either by documentary evidence or by the testimony of witnesses, but only to the charges or the instructions given to the jury by the court either of its own motion or at the request of counsel. The distinction drawn in the statutes of

Texas, and some other States, between "charges," which are given of its own motion by the court to the jury, and "instructions" which are given on the request of counsel does not occur in this section of our statute. The word "charges" is used in its generic sense and includes instructions prop~ so called, whether given by the court of its own motion or at the request of counsel.

The stenographer is required to take down the testimony of the witness, and to file the stenographic records made by him with the secretary of the district court where the action was tried. The copy of the record made by the stenographer generally constitutes *prima facie* the "minutes" of the court and may be used on all motions for new trials, review or appeal, when "minutes" of the court may be used as such.

But the word "minutes" of the court never, at any time, has been considered as including the testimony of witnesses. The stenographic report in any case may constitute the minutes of the court, but that does not make it a statement of facts nor a bill of exceptions. The notes of the stenographer are, or may be made very useful in preparing a statement of facts, or a bill of exceptions, but are not such in themselves. The stenographer is required on application to furnish the attorney general, the *fiscal* or any party to the suit, with a typewritten copy of the record or any part thereof on the payment of certain fees fixed by the statute. Such stenographic notes, when written out in longhand or typewriting, should be a faithful transcript of everything that takes place in the court at the trial of the case, and when properly transcribed by the officer who made them and filed with the secretary of the court, they may be used by the judge or the attorneys or other persons interested for reference in ascertaining what were the rulings of the court, just as the minutes of the court kept by the secretary might be so used; and they are the best evidence of what was said by the witnesses in case of a dispute on that point.

The statement of facts should be a brief and concise statement of all the facts proven on the trial, either by witnesses testifying orally or by documentary evidence, such statement should be agreed to and signed by counsel for both parties, when such agreement is possible, and afterwards examined and approved by the trial judge and signed and certified by him officially to be correct. The method of preparing and submitting and certifying a statement of facts in the trial court is set forth in rule No. 17 of the Rules of the district court, for criminal cases, which has often been referred to by this court and approved as correct. A document of this nature brings before the appellate court all the material evidence introduced before the trial court, and can be relied on as embodying the facts upon which the verdict of the jury and the judgment of the court, in the trial of the case, were based.

In order to prepare a bill of exceptions in proper form it should be made a distinct document, and as such appear in the transcript, properly headed, with the style and number of the action, and the nature of the demand, with the recital that it is a bill of exceptions. It should begin something like this: "Be it remembered that on such and such a date, in the above-styled case, the following proceedings took place and the following evidence was introduced on the trial;" or the following facts were proven on the trial, setting out the proceedings or the facts or the evidence in narrative form. Of course, the stenographer's notes should be used by the attorney, in preparing the bill of exceptions; that is the purpose for which they were made. Neither such notes, nor copies thereof, are under any circumstances to be sent to this court. It is unnecessary to repeat in the bill of exceptions the accusation, the verdict of the jury, the judgment of the court or other documents which form part of the judgment roll or are otherwise necessarily contained in the transcript.

If any questions of law have been raised upon the trial they can be set out as they occurred in the bill of exceptions together with the ruling of the court thereupon, and it should

also be stated what objections were made by the party preparing the bill of exceptions, and what were the rulings of the court made thereon.

These matters should be so clearly stated as to present to this court exactly the questions of law or of fact involved. And finally, if the statement of the bill of exceptions should be amended by the opposing counsel, and the amendments accepted by the counsel preparing the bill, they should be incorporated into it in proper form, and not merely attached thereto as amendments. When the counsel agree upon the bill of exceptions, if they can agree, it should be presented to the judge for his approval, and if no agreement can be made, the original bill with the amendments proposed thereto should be presented to the judge for his decision as to what amendments should be allowed; and finally, when the amendments are settled, the bill should be redrawn, with the amendments incorporated into it, so as to make a perfect bill which can be approved by the court. If necessary the judge may make further amendments and changes to conform to the truth of what occurred at the trial. When thus amended and engrossed the bill of exceptions should be approved by the judge and filed by the secretary and made a part of the record. The judge should certify that the document is correct and true an make an order that the same be filed by the secretary and become a part of the record. All this should appear over the official signature in a written certificate of the judge trying the case.

By a reference to Estee's Pleadings, volume 3, chapter 3, directions can be found for the proper preparation of bills of exceptions and statements on appeal, and reference is made thereto as authority. Directions are also given for the preparation of bills of exceptions in section 216 of our Code of Civil Procedure. If this section is carefully studied and followed there need be no errors committed in preparing such documents.

Counsel preparing cases for appeal might also study with profit the cases decided by this court and entitled (*People of Porto Rico* v. *Porrata* [16 P. R. Rep., 10], decided on January 24, 1910; *People of Porto Rico* v. *Brenes* [9 P. R. Rep., 503], decided on December 18, 1905; *López* v. *American Railroad Co.* [11 P. R. Rep., 148], decided on June 28, 1906;) and others on this same subject.

A transcript of the record made in the court below should, when presented in this court, be a complete document with a distinct beginning and ending and giving a clear account of the proceedings taken in the trial court. It should contain the notice of appeal, the judgment roll, and include a statement of the case, a bill of exceptions or a statement of facts, if any of these are necessary to a decision of the questions involved and to be decided by this court on appeal.

As no effort whatever apparently has been made in this case to comply with the repeated decisions of this court in the preparation of the bill of exceptions, no great attention is demanded of us in the consideration of the facts of the case. Counsel must, in discharging their duties, give some attention to the decisions of this court made for their guidance in these matters.

Let us examine the motion for a new trial which is based substantially on the following grounds:

1. Because during the progress of the trial the court had erroneously decided certain questions of law.

2. Because of certain errors committed by the court in its charge to the jury, and in refusing to deliver an instruction which counsel for accused had requested should be given to the jury.

3. Because the verdict of the jury was contrary to the law and the evidence in the case.

4. Because of newly discovered evidence, which if it had been adduced on the trial would have been favorable to the accused.

The order of the trial court overruling this motion sets out, at some length, the reasons for such action, and so it will be copied in its full extent and reads as follows:

"The court, on the motion for a new trial presented by counsel for the accused, Julio de Santiago, the rendering of the decision in regard to said motion having been set for to-day, decides:

"As to the first, second and third grounds for said motion, that as there has not been presented, or inclosed with said motion, a copy of the stenographic record of the trial, had in regard to this cause, the court cannot determine whether or not the alleged errors have been committed.

"In regard to the fourth ground—that is to say, as to newly dis-covered evidence—the court denies the motion because the newly dis-covered evidence, to which the law refers, is that evidence existing prior to the trial of the case, and which the accused has not been able to discover, nothwithstanding the zeal and diligence exercised by him in order to discover the same; but it never refers to evidence in re-gard to acts committed after the trial.

"As to allegation (*a*) of this same ground, fourth, namely, that the court committed an error in not allowing the witness, Sotero Martínez, to answer when he was cross-examined by the accused as to whether or not said witness had been convicted of larceny or of similar or other crimes, the court denies the motion, because when the witnesses for the defense were introduced, that witness was called to give his testimony in favor of the accused, and the court then al-lowed the accused to put the question as to whether or not he had been convicted of larceny.

"As to the elimination of the testimony referred to in allegation (*c*) of the fourth ground, the court denies the same because this point has already been decided by a motion to strike out presented by the accused at the trial, and said motion was then denied.

"Likewise and for the same reason, the court denies the motion based on allegation (*d*) which sets out that the court ought to have granted the request of the accused that the jury be instructed that he should be peremptorily acquitted, since this point had also been decided on a motion presented by the accused during the trial.

"As to whether the court erred when instructing the jury that 'larceny is the felonious stealing of the personal property of another,' the court denies the motion which is based on this allegation, because the court is of opinion that the English word 'felonious' is equiva-

lent to the Spanish words '*intención criminal,*' and that a charge of larceny in which it is alleged that the accused stole goods belonging to another person with '*intención criminal*' fulfills all the requisites of the law and those words are equivalent to the English word 'felonious.'

"As to the instructions given by the court to the jury, the court likewise denies the motion, because the court was not in possession of the stenographic record, nor was the same inclosed with the motion for a new trial presented by the accused.

"In regard to the allegations that they could not arrive at the conclusion that the accused is guilty of grand larceny from the evidence brought by the prosecution, the court likewise denies the motion because it is of the opinion that the jury is the only judge in determining, from the evidence introduced, whether or not the accused is guilty, and that only in a case when the verdict of the jury is contrary to the evidence brought at the trial must the court interfere with the jurisdiction of the jury, declaring the verdict to be without effect on the ground that it is contrary to the evidence.

"And as to the allegation (*c*) in regard to the instructions requested by the accused, the court also denies the motion, because the law requires the court to instruct the jury only on these points of law which are pertinent to the case, based on the evidence that might be introduced, but never on inferences that might be drawn by the jury from the evidence brought.

"For all these reasons, the court denies the motion for a new trial, presented by the accused. Given in open court on the 11th day of December, 1909."

While in the consideration of this case we reach the same result as that arrived at by the trial court, we do not wish to be understood as indorsing all the reasons given by that court for refusing the new trial sought by the defendant. We shall examine the questions presented here in the order taken by the appellant, in his assignment of errors, and confine our further discussion first to those points distributed by counsel under four general heads; and finally to the ruling of the trial court on the defendant's motion in arrest of judgment.

I. The first error complained of, as having been committed by the trial court, in erroneously deciding certain questions of law, relates to the admission and exclusion of certain state-

ments made or offered as evidence, on the trial of the cause and set out in the bill of exceptions found in the record. Although the bill of exceptions offered by the defendant's counsel, and included in the transcript, is not prepared strictly in accordance with the rules and the often-repeated decisions of this court, we shall omit nothing material to the defense of the accused or which might have resulted in a different verdict and judgment from that rendered by the jury and the court below.

1. In regard to the witness, Felipe Hernández, the person from whom the calf is alleged to have been stolen. Several questions were asked him by the defendant's attorney with the avowed purpose of impeachment; but he failed to lay the proper predicate by calling the attention of the witness to the time, place, persons present and circumstances under which the supposed conversations with the commissary of the ward may have taken place; and after this had been repeated three times the court refused permission to counsel to proceed further along those lines. To these rulings the counsel for defendant duly excepted. Sections 244 and 245 of the Code of Criminal Procedure point out the method of impeaching a witness and must be followed in such matters. As the counsel did not see fit to follow the requirements of the statutes the court properly refused to permit the questions to be renewed. Such ruling clearly appears to us to have been based on a proper interpretation of our statutes and we find no error therein.

2. The exception taken concerning the testimony of the witness, Eladio Hernández, the brother of the owner of the stolen calf, was to the refusal of the court to strike out the testimony because it was irrelevant. The same motion had been made in regard to the testimony of Felipe Hernández and both were properly overruled. No *fiscal* can prove his whole case by one witness, unless under very extraordinary circumstances. And it is often impossible to determine at the conclusion of each witness's testimony whether or not it may be ma-

terial; but in the case of these two witnesses it was clearly evident that the facts sworn to tended to prove the offense charged against the defendant. There was no error on the part of the court in the ruling made and excepted to in regard to the testimony of the brothers Hernández.

3. Another exception was taken by the counsel for the accused to the ruling of the court in regard to the cross-examination of the prosecuting witness, Sotero Martínez. By questions directed to this witness it was sought to contradict him, and to attack his reputation for veracity, by showing that he had been denounced by the accused several times for theft and could not be friendly towards him as he had stated. The court, because the witness had already answered that the accused had only denounced him once, required counsel in propounding the questions to confine himself to fixed dates under section 245 of the Code of Criminal Procedure. Besides, when the same witness was called by the defendant to testify in his favor, counsel was permitted to ask him whether or not he had been convicted of the offense of theft. Since, under section 244 of the Code of Criminal Procedure, the witness, Martínez, might have been shown, on his own examination, to have been convicted of a felony, it might have been properly claimed that an error had been committed in refusing to allow these questions on cross-examination and it was necessary to cure this inadvertence which was done in the manner indicated. But in the examination of witnesses it is required of counsel, when the court or opposing counsel request it, to state definitely the purpose in view in asking questions of this nature, and from the bill of exceptions it does not appear that defendant's counsel did this in a very clear or intelligible manner. This whole transaction comes up to us in a very confused and disorderly fashion and it has been necessary to search the whole record to arrive at a conclusion. But taken altogether we fail to find any error committed by the court on this point which has not been subsequently corrected.

4. In regard to the witness, Ramón Rodríguez. The motion to strike out his testimony was properly overruled as it was very material. On cross-examination the witness was asked whether or not the place where the calf was born was level. The witness had testified that when he saw the calf born he was in his own house, a long way off, and could not tell the color. On the objection of the *fiscal* the court ruled out the question and the counsel for the accused took an exception. Great latitude is allowed to counsel on cross-examination, and district attorneys ought not to object to their questions except for very good reasons. But at the same time the extent of the examination is confided, in a great measure, to the discretion of the court; and unless an abuse of this discretion is shown such a ru'ing as that made by the judge in this matter will not be held to require a reversal of the judgment. Neither would such an error as this be held to be material; as no damage is shown to have been suffered by the defendant from the exclusion of the evidence.

5. The testimony of Francisco Rosado was voluntarily withdrawn by the *fiscal*.

6. The last witness examined for the prosecution was Lorenzo Gómez who purchased the stolen calf from the accused. The attorney for the defendant moved to strike the testimony of Gómez from the record because he spoke of a calf 5 months old and the calf alleged to have been stolen was only 1 day old. The court correctly refused the motion and allowed the testimony to go to the jury for their consideration. Any discrepancy between the age of the calf alleged to have been stolen and the one which the witness testified was in possession of the person who had purchased it, from the accused, was a matter which was properly left to the consideration of the jury in connection with all the other evidence in the case. Such matters cannot properly be reached or corrected by a motion to strike out the whole or any part of the testimony given by a witness.

7. At the conclusion of the evidence offered by the prosecution the defendant's counsel moved to strike from the record all that had been proven, which the court very properly refused to do. This was, of course, equivalent to what is commonly called a demurrer to the evidence, and amounts to withdrawing the case from the jury, or a peremptory instruction for an acquittal. It is only in the rarest cases that such a motion should be granted. Motions to strike out testimony should be sustained only when, through some mistake or inadvertence, some fact or other is allowed to be proven which does not properly belong to the case. Such motions are generally addressed to the sound discretion of the trial court.

8. At the suggestion of the court the defendant's counsel made a motion, under section 257 of the Code of Criminal Procedure, that the court should acquit the defendant for want of sufficient proof to warrant a conviction. Upon argument the court finally overruled the motion on the ground that it was peculiarly within the province of the jury to determine the question of the guilt or innocence of the accused and the grade of the offense. This was certainly proper and a correct ruling. These questions being purely matters of fact were properly left to the jury for their decision under proper instructions from the court.

II. We have carefully examined the charge given by the court to the jury in this case and fail to find any material errors therein. The instructions given at the request of the accused were certainly as favorable to him as he could reasonably ask; and the one refused had no pertinency to the case; as there is nothing whatever in the evidence or the accusation to justify classing the crime under consideration as one of receiving stolen goods.

III. As far as the record shows there is no basis whatever for the claim, on the part of the accused, that the verdict of the jury is contrary to the law and the evidence. On the reverse it seems amply justified by both. As far as errors of law are concerned they are and will be treated of under the

other assignments of error. As to the evidence in the case
we have no means of knowing whether it was sufficient or not
to support the verdict and judgment, since we have only a por-
tion of the facts proven before us. There is no statement in
the transcript which purports to set out all the facts adduced
on the trial. The bill of exceptions presents only such por-
tions of the evidence as are necessary to determine the cor-
rectness or otherwise of the rulings of the court. Very often
and in various jurisdictions a bill of exceptions is required to
perform the office of a statement of the case; and such is the
uniform practice in the Federal courts. But there being noth-
ing in the bill of exceptions to show to the contrary we must
presume that the judgment is sustained by the evidence.

IV. The trial court correctly disposes of the demand for
a new trial on account of newly discovered evidence. Such
evidence must be as to facts in existence at the date of the
trial and never in regard to those occurring after the rendi-
tion of the verdict. We infer, from the order of the court,
overruling the motion for a new trial, that the so-called newly
discovered evidence related to facts of this nature. Such
being the case the cause before us is on the same basis with
the rape case of *The People of Porto Rico* v. *César Español*,
[16 P. R. Rep., 203], decided by this court on March 20 last,
to which reference is made for the rules governing applica-
tions for new trial on the ground of newly discovered evi-
dence. There is nothing in the entire record, as presented
here, which shows what the facts relied on really were. Some
allusion is made in the motion for a new trial, which is a sort
of brief and motion combined, to certain affidavits, but they
do not appear in the record. So this ground of the motion
for new trial slips from beneath the feet of counsel for ap-
pellant and cannot be relied on as a reason for reversal.

V. As for the motion in arrest of judgment there is much
more to be said. It is really the strongest point in the de-
fendant's case; as counsel seemed to regard it on the oral
argument before this court. Some of the authorities cited are

certainly strongly in favor of the insufficiency of the accusa-
tion. But it must be remembered that this court has never
held that the same strict rules should be applied to informa-
tions presented in our courts as are enforced in like cases in
the States of California, Texas and Montana, as well as many
other courts on the continent. The main question in regard
to this information is whether or not it sufficiently charges
the crime of grand larceny. This crime is complete if the
property stolen is a calf, regardless of its value. Of course,
if the animal was dead at time of the appropriation and as-
portation, then it was not a calf, but veal or carrion, as the
case might be, and the value wou'd need to be proven and
shown to be greater than $50 to make the offense grand lar-
ceny. But this question was fairly submitted to the jury, in
the instructions asked by the defendant's counsel, and decided
unfavorably to the appellant. The full text of the informa-
tion is as follows:

"In the name and by the authority of the People of Porto Rico.
United States of America. The President of the United States, ss:
In the District Court of Humacao, on the 1st of November, nineteen
hundred and nine. *The People of Porto Rico* v. *Obdulio de Santiago,
known as Julio de Santiago.* The *fiscal* presents an information
against Obdulio de Santiago known as Julio de Santiago for the
crime of grand larceny (felony), committed in the following manner:
The accused Obdulio de Santiago, known as Julio de Santiago, one
evening of the month of May, 1909, and within the judicial district
of Humacao, carried away with criminal intention from an estate of
Telésforo Hernández, a calf with a white tail, and a spot on the fore-
head, belonging to Felipe Hernández, and sold the same to Lorenzo
Gómez. This fact is contrary to the law, for such cases provided,
and to the peace and dignity of The People of Porto Rico. José R.
Aponte, Prosecuting Attorney of the District."

The main objection made by counsel to the information
is the claim that it does not use the word "feloniously" or
charge that the defendant "stole" the calf. It will be noticed
that the accusation is made against the defendant for the

offense of grand larceny. This would be a sufficient allegation of the "stealing" if such a distinct charge were necessary. But is it sufficiently set forth that the unlawful act was feloniously done? The English word "felony" is inserted in the information in parenthesis; and perhaps this might be deemed sufficient. It is correctly maintained by the defendant's counsel that the English text of the Penal Code in force in this Island is the original, as it was the English copy of the bill which was signed by the Governor and became the law of the land. There have been several decisions of this court to this effect, to wit, (*The People of P. R.* v. *Charón,* decided November 3, 1904; *Cruz* v. *Domínguez* [8 P. R. Rep., 551], decided June 15, 1905; and *People* v. *Kent* [10 P. R. Rep., 325], decided March 5, 1906.) It is also true that section 426 of our Penal Code is copied literally from article 484 of the Penal Code of California. Then, of course, the interpretation upon that article by the Supreme Court of that State must receive our highest respect.

But it is contended that the proper translation into Spanish of the English word "feloniously" is *"con intención criminal,"* the same being equivalent terms. If this translation is correctly made the objection disappears. And this was doubtless the view taken by the *fiscal* and the trial judge in passing on the sufficiency of this information when it was attacked on the motion in arrest of judgment. It seems that there is no single word in Spanish which is the exact counterpart of the English word "felony" or "feloniously." Of course, it must be conceded that grand larceny is the "feloniously taking," etc. But it has been well said, in substance, by the Supreme Court of Kansas that the word "feloniously," in a legal sense, means done with the intent to commit a crime of the nature of a felony—that is to say, done with a deliberate purpose to commit a crime, or done in a felonious manner—which is the same as saying with deliberate intention to commit a crime. (See *State* v. *Bush,* 47 Kan., 201; 27

Pac. Rep., 834; refering also to an Oregon case styled *Wong* v. *Astoria,* 11 Pac. Rep., 296.)

The information in this case is not as clear as it should be. Some question might arise whether the word *"sustrajo"* is equivalent to the word "stole" but *"sustrajo"* is the word which has been used in the Spanish copy of the Penal Code for eight years as the equivalent of "stole." We think the defendant had all the notice necessary of the crime with which he was charged. Besides he presented no objection in in the court below, to the information as it is written.

From the definition heretofore given it clearly appears, if the signification given is correct, that any act perpetrated with the deliberate intention to commit a crime—that is to say, with a criminal intent—if the crime is of the grade of a felony, is "felonious." Hence the rendering of the word "feloniously" by the words *"con intención criminal,"* is entirely correct. So the information contains the magic word "feloniously" and is not amenable to the objection urged against its validity. Then we feel constrained to hold that the information is sufficient to support the conviction, and the motion in arrest of judgment was properly overruled.

We have carefully reviewed all the important matters brought to our attention by counsel for the accused. If the record discloses any other supposed errors they are not important in that they could not have deprived the defendant of any substantial right and may properly be disregarded. (Code of Crim. Pro., sec. 362; Act of May 30, 1904; Sess. Acts 1905; p. 10; *People of Porto Rico* v. *Bird* [5 P. R. Rep., 387].)

Our statutes denounce the act of stealing a calf, or any animal of the cow, horse or ass kind, as grand larceny and prescribe that any person found guilty of such a crime shall be punished by imprisonment in the penitentiary for not less than 1 nor more than 10 years. The trial court in this case fixed the punishment of the accused at 5 years. The calf could not have been worth more than $3. To have stolen the winner of the Derby could not have subjected him to

more than twice that period of imprisonment. The term imposed seems to us to be quite severe and, in accordance with the statute which confers on us the power, in our discretion, to reform the judgments of the district courts, on appeal, section 364 of the Code of Criminal Procedure, we think it right to reduce the punishment, in this case, to one year in the penitentiary. The judgment herein rendered on December 11, 1909, will be reformed so as to reduce the punishment accordingly.

*Affirmed.*

Chief Justice Hernández and Justices Wolf and del Toro concurred.

Mr. Justice Figueras did not sit at the hearing of this case.