THE STATE OF KANSAS v. W. O. BUSH.

VOTERS—*Registration—Compliance with Law.* A slight departure from some directory provision of the act relating to the registration of voters in cities, without any fraudulent intent on the part of the officer, and which in its nature and effect cannot injure any one or operate to interfere with or defeat the purpose of the act, is not punishable as a felony, or within the penalty described in § 15 of the act.

*Motion for Rehearing.*

PROSECUTION for improperly registering the name of a voter. The court below sustained the motion to quash the information, and discharged the defendant, *Bush.* The State appealed. This court, at its session in January, 1891, reversed the judgment of the district court of Butler county, and remanded the cause for further proceedings. (*The State v. Bush,* 45 Kas. 138, *et seq.*) In due time the defendant filed his motion for a rehearing, which the court overruled, at its session in October, 1891.

*E. N. Smith,* and *Clogston, Hamilton, Fuller & Cubbison,* for the motion.

*John N. Ives,* attorney general, *contra.*

The opinion of the court was delivered by

JOHNSTON, J.: Upon the original hearing, no argument or appearance in behalf of the defendant was made; but upon

this application for a rehearing the defendant appears by his counsel and insists that the information filed against him is inadequate in its averments, and fatally defective in not charging a culpable intent. It is stated, in substance, that he was the city clerk of El Dorado, and that he unlawfully and feloniously registered J. N. Hanna as a qualified voter, when Hanna did not appear in person, or was not present in the office of the city clerk, giving his name, occupation, and place of residence, as the statute directs. It is stated that, at the hearing of the motion to quash, the county attorney informed the court "that there would be no effort made to show any fraudulent intent on the part of the defendant in the simple act of registering J. N. Hanna, who was at that time a resident, and otherwise a legal and qualified elector in the city of El Dorado, but who did not appear in person before said clerk on the day on which he was registered." It is also stated that the district court held that, unless "the defendant by his act intended to commit some wrong, either in registering a person not entitled to vote, or intending to injure or defraud a person with a right to vote out of his vote, or intending to injure or defraud some candidate before the election, that the defendant would not be guilty of violating the law;" and as none of these things were contended for by the prosecution, the motion to quash was sustained.

It is earnestly contended that it was not within the legislative intent to punish as for a felony every omission or failure of the officers to carry out the minute and minor details of the registration act, and that, although the prohibition of the act was general in its terms, it fairly embraced only the mischiefs which the enactment was intended to prevent. It is therefore urged that the information should contain statements showing a culpable intent on the part of the defendant to defeat the obvious purpose of the statute, or allegations of some acts or omissions of the defendant of a substantive character, necessarily resulting in the wrong or injury which the legislature intended to suppress. The writer hereof is now inclined to think that the allegations of the information are

insufficient, but the majority of the court are of opinion that the language of the charge stating that the act was unlawfully and feloniously done characterizes it as a crime, and therefore the information is not so inadequate in statement as to be fatally defective. The court, however, does not decide, as counsel seem to think, that every departure from the letter of the statute comes within its prohibition and penalty, and therefore the hardships which counsel imagine will result from the enforcement of the act do not exist. It is true that the language of § 15 is sweeping in its terms, and, if construed with literal severity, would embrace the slightest departure from any direction or detail which the statute contains, however innocent and harmless the act or omission of the officer might be. It is evident from the provisions and penalty of the act that such was not the purpose of the legislature. The act is a general one, giving specific and minute directions and details as to the preparation for and the regulation of the registration of voters in cities of the first and second classes. Minute directions are given as to the various steps to be taken and the manner thereof, some of which are very important, while others are of less importance; and at the end of the chapter it is provided that if any officer shall neglect or refuse to perform any act required by the statute, and in the manner required by it, he shall be guilty of a felony, and punished by confinement and hard labor in the penitentiary, as well as to forfeit the office which he then holds. The legislature doubtless intended to impose upon the officers a faithful observance of the provisions of the act, with a view of carrying out its purposes; but it will hardly be contended that the legislature intended to visit so severe a punishment upon an officer free from any wrong intent, for some slight departure from an unimportant detail of the law, which does not and cannot operate to defeat its object. We may properly look at the mischief proposed to be remedied, and to some extent the severity of the penalty imposed, in determining the true legislative intent in framing the act.

Voters—registration—compliance with law.

It has been held that the purpose of the registration act is

to preserve the purity of the ballot-box, by ascertaining in advance, by proper proofs, who are entitled to vote at an election, thus securing, ten days before the election, the full registry of all persons entitled to vote, which registry can be examined and scrutinized by any interested party. (*The State v. Butts*, 31 Kas. 537.) Any substantive act or omission of an officer which appears to operate to defeat this purpose comes within the prohibition and penalty of the statute, but a strict compliance with a minor detail that could have no such effect was not intended to be punished as a felony. For instance, the act provides that, on January 1st of each year, the mayor and council shall procure and open a poll-book for each ward in the city. Would the inadvertent omission to furnish a poll-book until the following day subject these officers to imprisonment in the state penitentiary? The statute further provides that the poll-books shall at all times be kept in the office of the city clerk. If the clerk should take one book out for repairs after office hours, and return it in time for the opening of business the next morning, would he be liable to a felon's punishment? Again, the act requires that the books shall be open at all times during the year, except for 10 days preceding the election; but it will not be contended that the clerk must keep them open during the night-time, or be held liable to the rigorous penalties of the act. This is the more apparent, for another section provides for registration during the usual office hours. If the clerk, as a matter of courtesy and accommodation, should remain in his office a short time beyond the usual office hours, and should then register legally-qualified voters, would he be held liable to the penalties of the law? He is required to enter the names of the persons registered in alphabetical order; but if he should, by mistake, fail to enter a name in that order, he would hardly be guilty of felony, although the work was not done in the manner provided in the act. It is also provided that no person shall be registered unless he appear in person at the city clerk's office and apply to be registered; but if a qualified voter who was an invalid was driven in a carriage to the city clerk's office, but was un-

able to enter there, and should call the city clerk out in the
street, or should chance to meet him in the street and there
apply to be registered, and the city clerk, knowing that he
was unquestionably a qualified voter, should register him,
would this deviation from the strict letter of the statute be
within the severe penalties provided in § 15 ?   We think not.
These and many other like acts and omissions are within the
letter of the statute, but manifestly the legislature did not
contemplate that such acts or omissions should be punished
as felonies.   A departure from some directory provision, made
without fraudulent intent, and which in its nature and effect
cannot injure anyone or operate to defeat or interfere with the
purpose of the act, cannot be regarded to have been in the
mind of the legislature in prescribing the penalties of the act.
Although such departure appears to be within the strict letter
of the act, a consideration of the mischief intended to be pre-
vented, the remedy proposed, and the punishment provided,
indicate clearly that such was not the intention of the makers
of the statute.   It has already been held that, when the in-
tention of the legislature can be discovered, it should be sen-
sibly followed, although such interpretation may seem contrary
to the letter of the statute. (*Intoxicating Liquor Cases*, 25 Kas.
751, 762.)

The motion for a rehearing will be denied.

HORTON, C. J., concurring.


VALENTINE, J.: I concur in overruling the motion for a
rehearing, but I do not wish to express any opinion upon any
matter not involved in the consideration of this question.
The fundamental question to be considered is, whether the
defendant's motion in the court below to quash the informa-
tion should have been sustained or not; and as to when infor-
mations may be quashed and when not, see the case of *The
State v. Morrison*, 46 Kas. 679; same case, 27 Pac. Rep. 133.
The only substantial question now presented is, whether the
information states a public offense as against the defendant or
not.   Or, in other words, the question is this: Where a crim-

inal information states and charges everything and all things necessary under the statutes to constitute a public offense, and states the same substantially and almost literally in the language of the statute defining the offense, and charges that the acts of the defendant constituting the offense were committed by him "unlawfully and feloniously," does such an information state a public offense or not? Or perhaps, in still other words, the question is this: May a person unlawfully and feloniously violate a criminal statute without being guilty of any offense? In the case of *Wong v. Astoria*, 13 Ore. 538, (same case, 11 Pac. Rep. 295,) it was held, that to allege that an act was done "willfully and unlawfully" was equivalent to alleging that it was done "knowingly." In the case of *Weinzorpflin v. The State*, 7 Blackf. 186, 195, it is said among other things, as follows:

"'Feloniously' is substituted for it [the word 'unlawfully'] in this indictment, and is not tantamount to it, but is a word of far more extensive criminal meaning. The act complained of could not have been feloniously, and not unlawfully, done."

In the case of *Carder v. The State*, 17 Ind. 307, it is said —

"That the word 'feloniously' in this connection in which it was used in the indictment was identical in its import with the word 'purposely.'"

In the case of *Commonwealth v. Adams*, 127 Mass. 15, 17, it is said:

"But the allegation that the defendant maliciously and feloniously incited and procured the principal to commit the felony *ex vi termini* imports that she acted with an unlawful intent."

In the case of *Allen v. The Inhabitants, etc.*, 3 Wilson [Eng.], 318, it is said as follows:

"Here he [the prosecutor] has alleged in his declaration, and proved at the trial to the satisfaction of the jury, that the same was committed and done *feloniously;* and that act, which was committed *feloniously,* was certainly done willfully, unlawfully, and maliciously; for doing an act *feloniously* is doing it *malo animo,* viz., with malice; therefore Serjeant Burland concluded

that the declaration was perfectly right, and of that opinion was the whole court, and gave judgment for the plaintiff."

In Webster's International Dictionary it is said that the word "felonious" means "having the quality of a felony; malignant; malicious; villainous; perfidious; *in a legal sense, done with intent to commit a crime.*" The Encyclopædic Dictionary says that the word "felonious" means, in law, "of the nature of a felony; done with deliberate purpose to commit a crime;" and the word "feloniously" means, in law, "in a felonious manner; with deliberate intention to commit a crime." See, also, the Imperial Dictionary and the Century Dictionary, substantially to the same effect.

Under the foregoing authorities, and under the allegations of the information, the defendant did all that was necessary to be done, under the statutes, to constitute his acts a criminal offense; and as he did the same " unlawfully and feloniously," he did the same "with intent to commit a crime," ( Webster's Int. Dict.,) or " with deliberate intention to commit a crime." (Encyc. Dict.) It would therefore seem that the information ought to be held to be sufficient. Can a person violate a criminal statute, " with deliberate intention to commit a crime," and still be innocent and blameless ? Where a statute prohibits a thing and makes the doing of the same a criminal offense, but nevertheless a party does such thing, and does it "unlawfully and feloniously," or, in other words, does it "with the intent to commit a crime," is he still innocent and blameless ? Will it be claimed that the statute in the present case is a bad law, and that the legislature has no right to pass a bad law, and therefore that the same should be annulled by the courts ?