## [No. 3847.]
## WILLIAMS v. THE PEOPLE.

1. CRIMINAL LAW—PERJURY—INFORMATION.

In an information for perjury the omission of the word "willfully" from the charging part of the information is not cured by the use of the word "corruptly," or by alleging that the testimony was known by defendant to be false and untrue, but an allegation that the defendant did "feloniously, unlawfully, corruptly and falsely" testify instead of using the statutory language "willfully, corruptly and falsely" is sufficient to charge the offense since the word "feloniously" is equivalent to and supplies the omission of the word "willfully."

2. PRACTICE IN CRIMINAL CASES—SPECIAL PROSECUTOR—AUTHENTICATION OF INFORMATION.

Where the district attorney is disqualified from prosecuting a case and the court appoints a special prosecutor, the prosecutor so appointed is authorized to sign an information in the case in his own name, and the fact that he placed before his name the name of the district attorney and added to his own signature the words "special deputy" neither added to, nor detracted from, the proper authentication in his own name. The additions will be treated as surplusage.

3. EVIDENCE—HEARSAY—PREJUDICIAL ERROR.

The testimony of an official stenographer as to what a witness had testified in a former case in which the defendant was not a party is hearsay and incompetent, and its admission over defendant's objec-

tion is ground for reversal unless it appears so clear as to be beyond reasonable doubt that the error did not and could not have prejudiced the rights of the defendant.

*Error to the District Court of El Paso County.*

Mr. W. S. MORRIS and Mr. J. K. GOUDY, for plaintiff in error.

The Attorney General, Mr. G. H. THORNE, Mr. CALVIN E. REED and Mr. DAN B. CAREY (Mr. HENRY McALISTER, JR., of counsel), for the people.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

The defendant was convicted of the crime of perjury, and he prosecutes this writ of error to set aside the sentence, for the following reasons: First, the information as filed did not charge a criminal offense, and particularly was this true after the court withdrew from the jury's consideration a portion of the charges therein set out; second, the information was not signed by any officer authorized by the statute to present and sign such pleadings ; third, the admission, over defendant's objection, of hearsay testimony offered by the people.

1. Among other essential elements of the crime of perjury under our statute (Gen. Stats. 1883, sec. 787 ; 1 Mills' Ann. Stats. sec. 1270) which, of course, must be set out in an information, is that the oath or affirmation was taken or made " willfully, corruptly and falsely." The charging part of the information here is that the defendant "feloniously, unlawfully, corruptly and falsely " did testify, etc.

Why the statutory language was not used we do not know. The practice of departing from it and employing what the pleader conceives to be equivalent terms, cannot be too strongly condemned. Making experiments in matters of such grave importance, though successful in the present case,

should not be encouraged. By using the exact language much time of the courts would be saved that otherwise is consumed in unnecessary investigation.

It will be observed that "willfully" is not in the information, and this omission is said to be fatal. The strict rule requiring a statutory offense to be stated in an information or indictment in the exact language of the statute, is not in force in this jurisdiction; yet when the legislature makes use of certain words descriptive of the offense, these, or equivalent expressions must be employed. Unless, therefore, in the place of "willfully" the information contains a word or words of the same legal import, this information is fatally defective, because this is one of the words of description of the statutory offense of perjury.

It is claimed by the prosecution that the word "corruptly" found in the information, and the allegation at the close thereof to the effect that the testimony given by the defendant was false and untrue, as he then and there well knew, are of the same legal import. We do not concur in this view. Neither "knowingly" nor "corruptly" is its equivalent, nor do both of them comprehend its full meaning in the statute. "Willfully" is a word of stronger meaning than either. "Corruptly" means viciously or wickedly. One may do a thing knowingly without any improper or evil purpose. "Willfully," as employed in criminal and penal statutes, usually means something more than intentionally or voluntarily. It implies that the act done which it characterizes is designedly done with some bad purpose or intent, without justifiable excuse.

In *Potter v. United States*, 155 U. S. 438, 446, Mr. Justice Brewer refers with approval to the definition of Chief Justice Shaw found in the case of *Commonwealth v. Kneeland*, 20 Pick. 206, 220, wherein the learned chief justice said: "The word 'wilfully,' in the ordinary sense in which it is used in statutes, means not merely 'voluntarily,' but with a bad purpose." Mr. Bishop in his work on Criminal Law, vol. 1, § 428, says: "It is more frequently understood * * * as

signifying an evil intent without justifiable excuse." See, also, *Felton v. United States*, 96 U. S. 699, 703, *United States v. Edwards*, 96 Fed. Rep. 67, *State v. Preston*, 34 Wis. 675, and *United States v. Three R. R. Cars*, 1 Abbott's U. S. Rep. 196.

But the word "feloniously" which is found in this information supplies the place of the omitted word "willfully." Feloniously no longer possesses the distinctive · or restricted meaning it had at the common law. Under our constitution, article 18, section 4, a felony is any criminal offense punishable by death or imprisonment in the penitentiary; and an act that is done feloniously is one that is done with a more or less deliberate purpose or intent to commit a crime of the nature of a felony.

In *Allen v. Inhabitants*, 3 Wilson, 318, it is said, among other things : " Here he has alleged in his declaration, and proved at the trial, to the satisfaction of the jury, that the same was committed and done *feloniously*, and that fact which was committed feloniously was certainly done *wilfully, unlawfully*, and *maliciously ;* for doing an act feloniously, is doing it *malo animo*, viz., with malice; therefore, Sergeant Burland concluded, that the declaration was perfectly right; and of that opinion was the whole court, and gave judgment for the plaintiff."

In *Weinzorpflin v. The State*, 7 Blackf. 186, 195, it is said : " The particular departure from the language of the statute urged against the indictment is the omission of the word ' unlawfully.' * * * Feloniously is substituted for it in this indictment, and is not only tantamount to it, but is a word of far more extensive and criminal meaning. The act complained of could not have been feloniously, and not unlawfully, done."

Webster's definition of felonious is " having the quality of felony; malignant; malicious; villainous; traitorous; perfidious; in a legal sense, done with intent to commit a crime." In the Century Dictionary feloniously is thus defined : " In a felonious manner; wickedly; with deliberate intent to

commit a wrongful act, the act being in law such as constitutes a crime of the class termed felonies." See also *State v. Bush*, 47 Kan. 201; Moore's Criminal Law, § 791 and notes; *State v. Pennington*, 3 Head. (Tenn.) 119.

From these and other authorities that might be cited it seems clear that "feloniously" is, to say the least, equivalent in meaning to "willfully," as used in this statute. The strongest meaning claimed for the latter is intentionally or designedly and with a deliberate intent to do a wrongful act without justification. "Feloniously" certainly includes all of these elements, and the perjury charged could not have been feloniously, and not willfully, committed.

The additional point under this head is that when the court withdrew from the jury all questions save the charge concerning the date of a certain bill of sale, there was nothing left of the information averring that the testimony about it was given either willfully, corruptly or falsely. The plain grammatical construction of the language used is against such position, and we do not deem the point worthy of further mention.

2. It appears from the record in this case that the attorney of this judicial district, Henry M. Blackmer, was one of the attorneys in the civil cause during the trial of which the alleged perjury was committed, and the court therefore entered an order that W. K. Brown, one of the attorneys of the court, be appointed "special district attorney" to prosecute the pleas of the people in this behalf. The information was signed "Henry M. Blackmer, District Attorney, by W. K. Brown, Special Deputy District Attorney."

In the circumstances stated, section 1556, Mills'Ann. Stats. (Gen. Stats. 1883, sec. 1058) was the authority of the district court for appointing Brown to prosecute the case. Section 1432*b*, 3 Mills' Ann. Stats. (Sess. Laws, 1893, p. 116, sec. 1) provides that "all informations shall be filed in term time * * * by the district attorney of the proper county as informant, and his name shall be subscribed thereto by himself or by his deputy." The point made by the plaintiff in error

is that it does not appear that Brown was the "deputy district attorney" by appointment of that officer, and that there was no provision of law for the appointment by the court of a "special district attorney," or a "special deputy district attorney."

Aside from the question as to the right of the defendant to press the point after entering the plea of not guilty (*State v. McCaffery*, 16 Mont. 33; *State v. Osborn*, 54 Kan. 473; *State v. Foulk*, 57 Kan. 255; *People v. Turner*, 85 Cala. 432; *Wilkins v. The State*, 33 Tex. Crim. Rep. 320; *Brown's Appeal*, 69 Mo. App. 159), we are satisfied that the objection is not meritorious. Under the facts, the court, unquestionably, was authorized to appoint Brown to prosecute this case, and the information to which his name was signed was valid; and the mere fact that he added to his signature the words "special deputy district attorney" or placed before it the name of the regular district attorney, neither adds to, nor detracts from, the proper authentication thereof in his own name. W. K. Brown, if appointed by the court, had the right to sign his name to the information; and it must be presumed, in the absence of a contrary showing, that the W. K. Brown who the record shows was appointed by the court to prosecute the case was the same person who signed the information. The words preceding, and those following, his signature may be treated as surplusage, and the information is then properly signed.

3. We are of opinion that the admission, over defendant's objection, of the testimony of E. L. Preston, the official stenographer of the court, was prejudicial error. A brief statement of the case will make this clear. The specific charge, on which the defendant was on trial, is that he committed perjury in testifying in a prior civil action that a certain bill of sale was made and executed on the day it bore date, namely, the 18th day of September, 1895. The defendant himself, and some of his witnesses, upon the trial of the criminal case testified that the instrument was given on such date, thus corroborating the defendant's previous testimony in the trial

of the civil action now alleged to be false. Some of defendant's witnesses fixed the date by the circumstance that a man of the name of Burke at that time was at defendant's residence suffering from a gunshot wound theretofore inflicted. The people's witnesses, on the contrary, had testified that this bill of sale was given a year or more after the time it bore date. Upon rebuttal, E. L. Preston, the official stenographer of the court, was called by the district attorney and testified, against the defendant's objection, that Burke himself had testified in a previous criminal trial (*People v. Smith*) to which the defendant in this case was not a party, that he was shot on the 20th day of October, 1895.

This testimony was objectionable for several reasons. The defendant was not a party to the action in which Burke's testimony was given; there was no showing that Burke was dead or beyond the jurisdiction of the court. The particular objection which plaintiff in error makes is that it was hearsay testimony. It should be said that the attorney general virtually concedes that the trial court committed error in receiving this testimony, but seeks to evade the consequences of its admission upon the ground that it was not prejudicial to defendant. He says that it is not contradictory of any evidence produced by the people, for the people's witnesses placed the time when the bill of sale was made and delivered more than a year after the 18th day of September, 1895, which latter was the date testified to by the defendant and his witnesses as the day when that instrument was signed.

This may be true, but this testimony tended to weaken the testimony of those of the defendant's witnesses who fixed the date by the circumstance that Burke was then in defendant's house, suffering from a wound. If, as a matter of fact, Burke's testimony was true that he was not shot until the 20th of October, more than a month after the date of the bill of sale, then the testimony of defendant's witnesses to the effect that he was in defendant's house on the 18th day of September, confined there as the result of the wound not then inflicted, cannot, in the very nature of things, be true.

In other words, this testimony concerning Burke's statement of the time he was shot directly contradicts, and, if believed by the jury, destroys the effect of, that given by defendant's witnesses that the bill of sale was given in September. So that this testimony may have been considered by the jury as very material upon the vital question in the case, and we cannot say that it did not injuriously weigh against defendant.

This court is committed to the doctrine that the admission of erroneous testimony is ground for reversal unless it appears so clear as to be beyond reasonable doubt that the error did not, and could not, have prejudiced the rights of the party against whom it was directed. *Smuggler Union Mining Co. v. Broderick*, 25 Colo. 16, and cases cited. The same doctrine is emphatically stated in *Henry v. Colo. L. & W. Co.*, 10 Colo. App. 14.

For this error of the court in admitting improper testimony, the judgment of the district court is reversed and the cause remanded for a new trial.

*Reversed.*