No. 24,633.

THE STATE OF KANSAS, ex rel. RICHARD J. HOPKINS, as Attorney-general, *Appellant,* v. HERBERT J. CORWINE, as Mayor of the City of Topeka, *Appellee.*

SYLLABUS BY THE COURT.

REMOVAL FROM OFFICE—*Mayor of City—Neglect to Report Violations of the Liquor Law—Findings of Trial Court.* The action was one to oust from office the mayor of Topeka, for failure to make reports to the county attorney of violations of the liquor law, as required by section 5505 of the General Statutes of 1915. The court found the mayor was notified of four or five places where there was good ground to believe the law was being violated, and did not report them. The court further found the mayor had been diligent in his efforts to enforce the liquor ordinances of the city, had not willfully misconducted himself in office, or willfully neglected to perform his duties, and was not actuated by wrongful or corrupt motives, but that his official conduct was characterized by good faith. *Held,* a judgment refusing to remove the mayor from office will not be disturbed.

Appeal from Shawnee district court; JAMES A. McCLURE and GEORGE H. WHITCOMB, judges. Opinion filed March 10, 1923. Affirmed.

*Richard J. Hopkins,* attorney-general, *Charles B. Griffith, Dennis Madden, W. C. Ralston,* assistant attorneys-general, and *Tinkham Veale,* county attorney, for the appellant.

*Clad Hamilton, T. M. Lillard, A. M. Harvey, George T. McDermott,* and *Ralph W. Oman,* all of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action in the district court was one to remove the defendant from the office of mayor of the city of Topeka. Judgment was rendered in his favor, and the state appeals.

The petition charged the defendant misconducted himself in office, and neglected to perform duties imposed on him as mayor. Numerous delinquencies were specified. The appeal is predicated on the district court's refusal to oust the defendant for failure to notify the county attorney of violations of the liquor law, as required by section 5505 of the General Statutes of 1915, which reads as follows:

"It shall be the duty of all sheriffs, deputy sheriffs, constables, mayors, marshals, police judges, and police officers of any city or town having notice or knowledge of any violation of the provisions of this act, to notify the county attorney of the fact of such violation, and to furnish him the names of any witnesses within his knowledge by whom such violation can be proven. If any such officer shall fail to comply with the provisions of this section, he shall upon conviction be fined in any sum not less than one hundred nor more than five hundred dollars; and such conviction shall be a forfeiture of the office held by such person, and the court before whom such conviction is had shall, in addition to the imposition of the fine aforesaid, order and adjudge the forfeiture of his said office. For a failure or neglect of official duty in the enforcement of this act, any of the city or county officers herein referred to may be removed by civil action."

The action was commenced on June 24, 1922. It was heard before the judges of both divisions of the district court of Shawnee county, sitting together, and was decided on August 15, 1922. The court found the defendant's attention was not called to the provisions of section 5505 until about February or March, 1922. He then consulted the city attorney, and was advised that, so far as it related to mayors of cities, the section had been superseded by a later law. The defendant relied on this advice. The court found the defendant as mayor committed enforcement of liquor ordinances to the special charge of Frank Leech, chief of detectives, an officer of integrity and experience, and a diligent and energetic ad-

vocate of law enforcement. His instructions from the defendant were that the law should be vigorously enforced. The court also returned the following findings of fact:

"The mayor was notified of at least four or five places where there was good ground to believe the law was being violated. In each case he appears to have taken steps to have the law enforced. He reported the cases to the police officers, and instructed them to 'clean up the place.' Various raids were made upon these places, and upon some of them the officers did not find sufficient evidence to warrant the belief that a conviction could be had. . . . In instances that were reported to the mayor it appears that an effort was made to enforce the law, although in some cases perhaps more vigorous action might have been taken."

"The mayor has not reported violations of the state liquor law to the county attorney, except that in some instances reports have been made by Frank Leech, the chief of detectives, who had especial charge of the enforcement of the liquor ordinances."

"The evidence shows that there was coöperation between the city and the county authorities in the matter of the enforcement of the intoxicating liquor laws of the state.

"We find that the mayor has been diligent in his efforts to enforce the liquor ordinances.

"After a consideration of all the evidence presented in this case, we are unable to reach the conclusion that the mayor willfully misconducted himself in office, or that he willfully neglected to perform the duties enjoined upon him as the mayor by the laws of the state of Kansas, or that he was actuated by wrongful or corrupt motives, but we believe that it affirmatively appears that his conduct was characterized by good faith."

It will be observed that section 5505 of the General Statutes of 1915 contains three distinct subjects of legislation. The first part of the section imposes the duty to report to the county attorney. The second part provides for conviction and fine for failure to report, and for forfeiture of office as a consequence of conviction. The third provides for removal from office by civil action for breach of official duty prescribed by the act of which the section is a part. Under the second part of the section, failure to report does not forfeit office. Conviction in a criminal action for failure to report works a forfeiture, and that part of the section has no bearing on this case. The result is that, for all purposes of this case, section 5505 simply prescribes an official duty, and provides that for neglect to perform that duty the delinquent officer may be removed by civil action; and the section takes its place in a familiar class of statutes imposing duties on public officials and providing for their removal from office for neglect to perform such duties.

The state contends that willfulness and bad faith lie outside the issues in a civil action to remove an officer for neglect of official duty in enforcement of the liquor law, and asserts that, if it can be discovered that a mayor had notice of a violation of law, and did not report it, it is the imperative duty of a court to remove him from office, on proof of the naked fact. Suppose Leech should take with him a squad of police officers, raid a suspected place, seize a quantity of intoxicating liquor, arrest the possessor, book him at the police station, make a full report to the county attorney, and tell the mayor about it. Under the state's theory, the mayor should be ousted from office, unless he also reported to the county attorney. As indicated, there are numerous laws on the statute book of the same general type as section 5505. This court has always interpreted them in the light of the purposes to be accomplished, and has uniformly held that mere departure from the strict terms of a statute does not necessarily entail forfeiture of office. This method of interpretation was adopted in the first case brought before this court arising under the prohibitory law. (Intoxicating-Liquor Cases, 25 Kan. 751, 763.)

In the case of *The State v. Bush*, 47 Kan. 201, 27 Pac. 834, the statute provided that if any officer should neglect or refuse to perform any duty imposed on him by the act relating to registration of voters, he should be guilty of a felony, and should forfeit his office. (See *The State v. Bush*, 45 Kan. 138, 25 Pac. 614.) The defendant was prosecuted for improperly registering the name of a voter. The question was whether the information stated a cause of action. While the information was sustained, the court took occasion to interpret the statute:

"It is true that the language of section 15 is sweeping in its terms, and, if construed with literal severity, would embrace the slightest departure from any direction or detail which the statute contains, however innocent and harmless the act or omission of the officer might be. It is evident from the provisions and penalty of the act that such was not the purpose of the legislature. The act is a general one, giving specific and minute directions and details as to the preparation for and the regulation of the registration of voters in cities of the first and second classes. Minute directions are given as to the various steps to be taken and the manner thereof, some of which are very important, while others are of less importance; and at the end of the chapter it is provided that if any officer shall neglect or refuse to perform any act required by the statute, and in the manner required by it, he shall be guilty of a felony, and punished by confinement and hard labor in the penitentiary, as well as to forfeit the office which he then holds. The legislature doubtless

intended to impose upon the officers a faithful observance of the provisions of the act, with a view of carrying out its purposes; but it will hardly be contended that the legislature intended to visit so severe a punishment upon an officer free from any wrong intent, for some slight departure from an unimportant detail of the law, which does not and cannot operate to defeat its object. We may properly look at the mischief proposed to be remedied, and to some extent the severity of the penalty imposed, in determining the true legislative intent in framing the act." (*The State v. Bush,* 47 Kan. 201, 203, 27 Pac. 834.)

The case of *The State .v. Kennedy,* 82 Kan. 373, 108 Pac. 837, was one of quo warranto to remove a county commissioner, and the statute providing that if any commissioner or other county officer shall neglect or refuse to perform any act which it is his duty to perform, he shall forfeit his office and be removed, was under interpretation. The syllabus reads:

"It is not every oversight or omission within the strict letter of the law which will entail forfeiture of office. The purpose of the statute is to prevent persons from continuing to hold office whose inattention to duty, either because of its habitualness or its gravity, endangers the public welfare; and the neglect contemplated must disclose either willfulness or indifference to duty so persistent or in affairs of such importance that the safety of the public is threatened." (¶ 10, p. 374.)

Under stress of an unusual and perplexing state of affairs, arising out of destruction of bridges in Leavenworth county by the floods of 1903, the commissioners did not follow the statute relating to advertisement for the repair and rebuilding of bridges. Time of advertisement was deliberately shortened, with full knowledge of the law, and there was no advertisement for replacing one bridge. In the opinion the court said:

"The law relating to advertisement for bids is general in its terms. It makes no provisions for exceptions and emergencies. This may be from oversight, but more likely it is because in the judgment of the legislature it would be dangerous to the public to allow all county boards to act upon whatever they might deem to be emergencies. The court does not propose to abate the force of the statute, but it requires a very savage insistence on the letter of the law to demand the defendant's removal from office for what he did. It is expected that boards of county commissioners will be diligent in taking affirmative action to protect and to promote the general welfare. Checks upon their conduct are collateral means to the same ultimate end, but in a particular instance they may operate as embarrassments. Here advertisements were made in all cases except that of the county-line bridge, where the defendant protested and the duty devolved upon another board. The purpose of the statute—competitive bids and fair contracts—was in fact attained through the advertisements made. While the course pursued departed

The State, *ex rel.,* v. Corwine.

slightly from that prescribed, it is free from culpability of the character the statute denounces. Besides this, the law of quo warranto authorizes the court to take a broad view of motives and circumstances in the case of an official who has assumed the responsibility of rendering the public a genuine service in a somewhat irregular way, and, although not sanctioning the defendant's conduct as legal, the court is not obliged to deprive him of his office on account of it." (p. 387.)

In the case of *The State v. Trinkle,* 70 Kan. 396, 78 Pac. 854, the action was one to remove a county attorney from office for neglect to perform official duties in enforcement of the liquor law. The syllabus reads:

"In an action of quo warranto to remove from office a county attorney charged with violating his duty in respect to the enforcement of the prohibitory liquor law, the issue of primary importance is that concerning the defendant's good faith in his official conduct." (¶ 1.)

The case of *The State v. Bowden,* 80 Kan. 49, 101 Pac. 654, was one to oust from office the chief of police of Kansas City, for violations of the provisions of section 5505. Failure to report numerous violations of law of which he had knowledge was proved. The court, however, considered all the circumstances of the defendant's situation and his motive, and because there was no finding of corruption or willful disobedience of the statute, refused to order his removal from office.

The foregoing decisions were all rendered previous to the year 1911, and established the law that removal from office would not be predicated on neglect or refusal to perform official duty in the absence of actual or imputable bad faith. The decisions all rest upon the principle announced in the first case of ouster for neglect of duty in enforcement of the prohibitory law. That case was one to remove from office the county attorney of Saline county. It was tried in this court, before a jury, nearly forty years ago. In the instructions to the jury the court said:

"In fact, the main question in this case is, whether the defendant acted in good faith in the discharge of his duties as county attorney in the cases named in the petition." (*The State, ex rel. v. Foster,* 32 Kan. 14, 34, 3 Pac. 534.)

With this unbroken line of decisions before it, the legislature of 1911 enacted a very complete and efficacious ouster law, the first section of which reads as follows:

"Every person holding any office of trust or profit, under and by virtue of any of the laws of the state of Kansas, either state, district, county, township

or city office who shall willfully misconduct himself in office, or who shall willfully neglect to perform any duty enjoined upon such officer by any of the laws of the state of Kansas, or who shall in any public place within or without the state be in a state of intoxication produced by strong drink voluntarily taken, or who shall engage in any form of gambling, or who shall commit any act constituting a violation of any penal statute involving moral turpitude, shall forfeit his office and shall be ousted from such office in the manner hereinafter provided." (Gen. Stat. 1915, § 7603.)

It is a fact of common knowledge that correction of official shortcoming in enforcement of the liquor laws was one of the purposes of the statute. It applies, however, to neglect or refusal to obey all other laws and to all classes of public officials, and it expresses the essential element of bad faith in all cases of forfeiture of office for neglect of duty, by the word "willfully."

That the act was intended to supersede the common provisions for ouster for official misconduct and neglect of duty, scattered throughout the statute book, is clearly indicated by the all-inclusive scope of the quoted section, which creates causes of action for removal, by the comprehensive procedure prescribed, and by the saving section, which mentions proceedings under the criminal laws only. If, however, the act had not been so intended, the result would be the same, because of the consistent holding of the court that what is fairly equivalent to willfulness as applied to circumstances, is an implied ingredient of a cause of action for ouster for neglect of official duty.

In the case of *The State, ex rel. v. Foley,* 107 Kan. 608, 193 Pac. 361, decided in November, 1920, it appeared that the mayor of Parsons was advised by the county attorney that possession of intoxicating liquor by certain persons picked up by the police, was not a violation of the state law. The court held that whether the advice was sound or not was not material, and that failure to report such cases did not constitute willful misconduct or willful neglect of duty under the statute of 1911. The court went back to the case of *The State v. Trinkle* for the distinguishing characteristic of official conduct—genuine good faith—and said:

"The act providing for the removal of unfaithful public officers was not designed as a pitfall into which an honest and sincere public official might be plunged if he unintentionally erred in the discharge of his official duty." (p. 614.)

The state relies particularly on the case of *The State, ex rel. v. Deichler,* 108 Kan. 145, 194 Pac. 322. The action was one to remove

the mayor of the city of Coffeyville for neglect of official duty, including neglect to make the reports required by section 5505. The defense was diligent and faithful effort to enforce the prohibitory law, under difficulties. The court pointed out that the defendant's admissions were not compatible with his excuses; that he was playing with fire when he appointed a thoroughly discredited former chief of police as his chief of police; that he did not use reasonable diligence to close up persistent liquor nuisances he knew about; and that, with the example before him of ouster of one of his predecessors for the same fault, he did not put the county attorney in possession of information and evidence by which the county attorney might abate the nuisances. In this way the opinion stated, in language of least severity, that the mayor had not acted in good faith.

Sections 7595 and 7596 of the General Statutes of 1915 read as follows:

"The writ of quo warranto, and proceedings by information in the nature of quo warranto, are abolished, and the remedies heretofore obtainable in those forms may be had by civil action.

"Such action may be brought in the supreme court or in the district court in the following cases:

.     .     .     .     .     .     .     .     .     .     .     .     .

"*Second,* whenever any public officer shall have done or suffered any act which by the provisions of law shall work a forfeiture of his office."

The state contends that ouster may be adjudged under section 7596. The contention is disposed of by what has already been said. Under the second part of section 5505, the act done or suffered, which by law works forfeiture, is not withholding report to the county attorney, but conviction of that act. Section 7596 cannot operate on that part of the statute in this case because there has been no conviction. So far as it operates on the official duty prescribed by the first part of section 5505, it is of no greater potency than the concluding part of that section.

Finally, it is contended by the state that this court is not concluded by the findings of fact, and not only may but should try the case *de novo* on the record. The court has decided otherwise. (*The State, ex rel. v. Rayl,* 111 Kan. 571, 207 Pac. 759.)

The findings of fact are supported by evidence, the district court correctly comprehended and properly applied the law, and the judgment of the district court is affirmed.

MARSHALL, J., dissenting.

HOPKINS, J., not sitting.