The State, *ex rel.*, v. Anderson.

No. 25,707.

The State of Kansas, ex rel. Charles B. Griffith, Attorney-general, *Plaintiff*, v. W. E. Anderson, Clerk of the District Court, Shawnee County, *Defendant*.

SYLLABUS BY THE COURT.

1. Ouster—*Clerk of District Court—Findings of Commissioner Appointed by This Court Are Advisory · Only—Subject to Reëxamination by the Court.* The findings of fact made by a commissioner appointed by this court in an original proceeding are advisory only, although entitled to especial consideration where the effect of conflicting testimony is to be passed on; they do not require to be formally, approved or set aside as a basis for a judgment. His conclusions of law are always open to reëxamination by the court, and in general the court will render such judgment as the facts established by the evidence and findings warrant.

2. Same—*District Clerk Who Receives and Keeps for His Own Benefit Interest on Money in His Official Custody Deposited in Bank Violates the Statute.* A clerk of the district court who receives and keeps for his own benefit interest on money in his official custody deposited by him in a bank thereby violates the statute reading:

   "That no officer, state or county, or deputy, or clerk of the state officers, or staff officers of the governor, shall retain, under color of his office, any fee, compensation or reward for the performance or doing any service or thing appertaining to the duties of said office, other than is expressly allowed by law." (R. S. 21-1607.)

3. Same—*The Offense if Proven is a Misdemeanor, Involving Moral Turpitude.* The offense defined in the foregoing paragraph, which is elsewhere made a misdemeanor, involves moral turpitude within the meaning of that phrase as used in the statute providing for the ouster of an officer who violates a penal statute involving moral turpitude.

4. Same—*Delay in Reporting Money Collected Within Time Fixed by Statute.* The effect of the delay of a clerk of the district court to report money collected by him within the time fixed by statute is considered but not decided.

Original proceedings in quo warranto. Opinion filed November 8, 1924. Judgment for plaintiff.

*Charles B. Griffith,* attorney-general, and *William A. Smith,* assistant attorney-general, for the plaintiff; *Frank Doster,* and *J. E. Addington,* both of Topeka, of counsel.

*Eugene S. Quinton,* and *W. E. Atchison,* both of Topeka, for the defendant.

The opinion of the court was delivered by

Mason, J.: This action is brought by the state, on the relation of the attorney-general, against W. E. Anderson, the clerk of the

district court of Shawnee county, seeking to have him ousted from that office for willful misconduct. Mr. Gilbert H. Frith was appointed as commissioner to take the evidence and make findings of fact and law. On June 16, 1924, the commissioner filed his report, finding the facts in detail, his conclusion being against the removal of the defendant. On July 1 the case was set for hearing at the October session, and was then submitted to the court.

The charge which the commissioner reports as giving him the greatest concern relates to the defendant's receiving from the bank in which the money in his official custody was deposited interest at the rate of two per cent per annum on daily balances, which he kept for his own use. Of this matter the commissioner says:

"The funds which came into his hands as clerk of the district court did not, of course, belong to him. They were paid in as fines in criminal cases, deposits for costs made by plaintiffs, judgments, and in other ways, and he was merely the custodian of such funds; and, as such, it seems clear that the accumulated interest would belong to the owners of the funds and not to the defendant. His act in using this fund for his own gain cannot be justified from either a moral or legal standpoint, and yet I do not believe that the circumstances justify his removal from office on that account, because the willful doing of any wrong was not shown. On the contrary, it appears that the defendant was merely continuing a practice which had been in vogue for several years prior to his taking office."

1. In the brief for the defendant it is said:

"Unless exceptions are taken to the findings of fact, the court will not only presume, but is compelled by every rule of procedure to hold that the evidence fully sustained the findings of fact."

The findings of a commissioner acting under an order directing him to find upon the issues of fact and law have not the full force of those made by a jury or referee. They are merely advisory and do not require to be formally adopted or set aside as a basis for a judgment. So far as pure questions of fact are concerned, weight is given to the consideration that the commissioner is in a better position to pass upon conflicting testimony than the court. (*Hunt v. Gibson*, 99 Kan. 371, 375, 161 Pac. 666; *The State, ex rel., v. Foley*, 107 Kan. 608, 613, 193 Pac. 361; *The State, ex rel., v. Deichler*, 108 Kan. 145, 146, 194 Pac. 322.) In order that a commissioner's findings of fact may be challenged it is not necessary that an exception be taken or objection made by any prescribed method. Here the plaintiff does not in terms attack any finding of evidential or ultimate fact, but asserts that the finding which exculpates the de-

fendant is a conclusion of law which is subject to reëxamination by the court, and that upon the facts found a judgment of ouster should be rendered. The plaintiff contends that the facts found show willful misconduct as a matter of law, and that the statute makes the receiving and retention of the interest a misdemeanor involving turpitude, which under the ouster statute constitutes a ground for forfeiture of office in and of itself. If either of these contentions is correct the judgment should be against the defendant.

2. The statutes invoked by the plaintiff in support of the second contention read:

"That no officer, state or county, or deputy, or clerk of the state officers, or staff officers of the governor, shall retain, under color of his office, any fee, compensation or reward for the performance or doing any service or thing appertaining to the duties of said office, other than is expressly allowed by law." (R. S. 21-1607.)

"Any state or city treasurer or any deputy or clerk of any such treasurer, or any county officer or any deputy or clerk of any such officer, who shall violate any of the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in the sum not less than fifty dollars nor more than five hundred dollars." (R. S. 21-1609.)

"Every person holding any office of trust or profit, under and by virtue of any of the laws of the state of Kansas, either state, district, county, township or city office, who shall . . . commit any act constituting a violation of any penal statute involving moral turpitude shall forfeit his office and shall be ousted from such office in the manner hereinafter provided." (R. S. 60-1609.)

Two questions of unmixed law are involved: Is the collection and retention by a clerk of a district court of interest on funds in his official custody a violation of section 21-1607? and if so, is the misdemeanor there defined one involving turpitude? More concretely, the first question is: Does the money received by the clerk as interest constitute a "fee, compensation or reward for the performance or doing any service or thing appertaining to the duties of said office"? The language quoted appears to have been purposely selected with exceptional care to make it cover a wide field. The prohibition is directed not merely against the acceptance of a fee as compensation for performing an official duty, but is expressly extended to the retention of any reward for *doing anything appertaining to such duty*. A natural and lawful method for a clerk of the district court to use in caring for funds in his official custody is to deposit them in a bank. (*Phillips v. Bank,* 98 Kan. 383, 388, 158 Pac. 23.) In making such a deposit he is doing something apper-

taining to the duties of his office. In receiving for his own benefit interest on such deposit he is retaining a reward for doing something appertaining to his duty—for placing the money with the bank selected rather than with some other. He is accepting compensation from a private source for the way in which he elects to perform his duty with regard to the safe-keeping of the funds. We think such conduct is within the letter and the spirit of the statute under consideration.

3. On this phase of the case it remains to determine whether the misdemeanor defined by the statute is one "involving moral turpitude." It is doubtful whether any attempt to define it can serve to make the meaning of the quoted phrase any clearer. One definition in common use is:

" 'Moral turpitude' is defined as an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." (5 Words and Phrases, 4580.)

Another frequently invoked is contained in this quotation:

"Turpitude in its ordinary sense involves the idea of inherent baseness or vileness; shameful wickedness; depravity. (Webster's International Dict.) In its legal sense it includes everything done contrary to justice, honesty, modesty, or good morals. (Black's Law Dict.; Bouvier's Law Dict.)" (*Holloway v. Holloway*, 126 Ga. 459, 460.)

The weight of authority, although there is some difference of opinion on the subject, is to the efect that interest paid by a bank on money in the custody of an officer does not belong to him, but to the beneficial owner of the fund. (29 Cyc. 1425; 22 R. C. L. 465.) Various reasons are given for this view, some of them more or less technical, involving the question of where the title is vested and the character of the trust. Regardless of analogies and of the words that may be used to describe the relations of the persons concerned, we think the right of the real owner of the fund to whatever interest is paid upon it may be best sustained on the ground that it is against good conscience that one under a public duty to care for money intrusted to him by virtue of his office shall receive and keep for his own benefit what it has earned during his custody. That the practice may have been tolerated and condoned does not affect the matter. We do not believe that enlightened public sentiment has countenanced it. We hold that the law forbidding a public officer to retain any reward other than that allowed by law for doing anything appertaining to his duties as such, both in its general scope

The State, *ex rel.*, v. Anderson.

and as applied to the situation here presented, involves turpitude within the meaning of the phrase as used in the statute quoted. This does not imply that the conduct condemned is of unusual heinousness, but that the condemnation is justified on grounds of morality as well as of public policy. The circumstance that the legislature has made express provision with respect to interest on public money in the hands of treasurers, while omitting to do so in the case of clerks of the court, does not impress us as indicating a purpose to exempt such clerks from the obligations otherwise cast upon them in that regard.

The statute we are interpreting (R. S. 21-1609) was not brought to the attention of the commissioner, and his findings and conclusions were consequently made without any reference to it. The only effect of this omission is to deprive the court of the benefit it might otherwise have had of the commissioner's judgment upon the matters just discussed. It is the duty of the court to apply the law to the facts as established by the evidence and findings. The reliance of the plaintiff upon this statute was brought to the notice of the defendant long enough before the hearing to allow sufficient time to present arguments against the new contention.

4. What has already been said requires a judgment for the plaintiff. Another feature of the case, however, deserves comment. With reference to charges of neglect and delay in the performance of his official duties, including the filing of reports, the commissioner finds that ill health of the defendant, while not sufficient wholly to excuse his shortcomings, serves to explain them and to acquit him of willful misconduct. The statute requires the clerk of the district court, on the first day of the regular session of the board of county commissioners in the months of January, April, July and October, to present to that board an itemized account of all money collected during the preceding quarter, a penalty of $10 a day being imposed for delay, with a provision that "if such failure continue for fifteen days he shall forfeit his office." (R. S. 28-123.) The commissioner finds that "the defendant's first quarterly report was due on April 1 and was not filed until the latter part of August, and his report which was due on July 1 was not filed until early in September." In an action under the clause of the ouster statute directing the removal of an officer "who shall willfully misconduct himself in office" (R. S. 60-1609), the clerk of a city court was ousted for his failure to comply with the law requiring the payment at stated times of money

collected by him. It was held that his conduct could not be excused by a misunderstanding of the operation of two possibly conflicting statutes on the subject. (*The State, ex rel., v. Fishback*, 102 Kan. 178, 171 Pac. 348.) The analogy between that case and this is strong, but a decision on this point is unnecessary.

Judgment is rendered for the removal of the defendant from office.

HARVEY, J. (dissenting): I quite agree with the court in the high standard that should be maintained by a public officer in respect to moneys which come into his hands by virtue of his office, but I think that should not be made the basis for an order of ouster from office in this case. The ouster statute was designed to authorize the removal from office for patent and willful derelictions of official duty or criminal conduct involving moral turpitude. The refinement of reasoning set out in the opinion of the court, though in the main it accords with my judgment as an abstract proposition, shows how far short it is of coming within the purposes of the ouster statute. I would much prefer to base an order of ouster upon his failure to make his reports and turn over money when that should have been done—the question discussed but not decided in the opinion.